In re ESTATE of Gladys DYE, Deceased.

W. B. and Catherine SMITH and D. L. and Irma Foster, Appellants,

v.

Mary ALSOBROOK, Executrix, Appellee.

Court of Appeals of Tennessee, Middle Section.

July 1, 1977.

Certiorari Denied by Supreme Court . Oct. 3, 1977.

Noble L. Freemon, C. N. Griffith, Waverly, for appellants.

A. D. Walker, Jr., Dyersburg, Allen W. Wallace, Waverly, for appellee.

DROWOTA, Judge.

OPINION

This is an appeal from the judgment in a probate proceeding in which several holo-

graphic instruments were propounded as the last will and testament of Gladys Dye. The sole issue presented is whether testatrix effectively revoked a devise of her realty in one of these instruments by the physical act of drawing lines through the provision containing it.

This litigation began with the filing of a petition to probate in solemn form a holographic instrument dated January 1, 1974, and purporting to be the last will and testament of testatrix. The petition was filed June 13, 1974, by Mrs. Mary S. Alsobrook, a first cousin of testatrix who was also named as sole executrix in the instrument. This 1974 will, which was found in a lockbox containing other papers and possessions of testatrix, made no provision for disposition of her realty, consisting of her house and lot. During the course of the proceedings, serious questions arose as to the effect of another holographic instrument, which was dated February 2, 1972, and which also purported to be Mrs. Dye's last will. The 1972 will, which was found in the lockbox together with the 1974 will, named Mary Alsobrook executrix of testatrix's personal estate but appointed Wesley Fortner executor of her realty. The 1972 will further provided that her house and grounds should be sold and the proceeds should be divided among Mary Alsobrook, D. L. Foster, another first cousin, and Mr. and Mrs. W. B. Smith, friends of testatrix who were not related to her. Two additional holographic instruments, written by testatrix in 1947 and 1967, were also offered for probate.

A hearing was held before Judge Spencer of the Circuit Court of Humphreys County after County Judge Bradley recused himself because he was mentioned in one of the instruments. On July 11, 1975, the court rendered judgment that the 1974 instrument was the valid and complete will of Gladys Dye in regard to her personal property, and that because of its inconsistency with them it superseded the three earlier documents in this regard. The court reserved judgment on the issue of testatrix's realty until April 19, 1976, when it issued a memorandum opinion finding that testatrix intentionally revoked the 1967 will in writing the 1972 will, then effectively revoked the clause devising her realty in the 1972 will after becoming dissatisfied with that instrument, and finally wrote the 1974 will, in which she purposely chose not to make a disposition of her real property. The court concluded that she died intestate with regard to her real property. From a judgment embodying this conclusion D. L. Foster and Mr. and Mrs. W. B. Smith, named beneficiaries with Mary Alsobrook of the proceeds of testatrix's realty in the 1972 will, were granted an appeal limited to the question of whether the trial court erred in finding that testatrix died intestate as to her realty.

The key provision in this case is obviously the provision of the 1972 will in which Mrs. Dye attempted to devise her realty. That provision appears on the first page of the will and originally read as follows:

I appoint Wesley Fortner of Martin executor to handle my estate and sale of any real estate—my house & grounds to be sold and divided between Mary Alsobrook, D. L. Foster and Mr. & Mrs. W. B. Smith of McEwen.

This entire provision has been lined through. In addition, the word "void" has been written over "Wesley Fortner" and over "& grounds," "executor" has been changed to "executrix," and Mary Alsobrook's name has been written in above Fortner's. Alterations have also been made to the first two lines of the instrument, which originally read:

My Holographic Will dated—Feb. 21–1972 I, Gladys Sullivan Dye, being of sound mind and . . .

Here, between the lines, under "Will" and above "Sullivan" is written "(void) 12/30/73 revised." The date "Feb. 21–1972" has been lined out, and "Jan. 1–1974" substituted immediately below it.

Testimony in the case firmly established that all four wills were in testatrix's handwriting, and that the alterations made to the 1972 will were hers as well. All witnesses agreed that testatrix was a strongminded woman, of sound mind until struck

by illness in February of 1974. She had told several people in December of 1973 that she was going to write, or in one case "copy," her will. One witness testified that testatrix had often expressed dissatisfaction with prior wills, and had said in December of 1973 that she was finally going to write the will she had talked about for so long. Testatrix told a number of people in January 1974 that she was working on the will, but there was no indication that her last illness, beginning in February, interfered with this work. There was also conclusive testimony that testatrix was angry with Wesley Fortner, and it was for this reason that she had eliminated him from the 1972 will as executor of her real property. There is no doubt of this, for in a "codicil" on the last page of the 1974 will testatrix expressly states as much. There was no evidence that she was angry with appellants Foster and the Smiths.

■ Although there does not seem to be any authority in Tennessee squarely holding that revocation of a will in part by physical act is possible, indications are that this is the law. See 1 R. Pritchard, Law of Wills, § 270 (3d ed. 1955). For a revocation to be valid, concurrence of an intention to revoke and some act by the testator manifesting that intention is required. *Donnelly v. Hendrix,* 49 Tenn.App. 361, 355 S.W.2d 116 (1960); *Parker v. West,* 29 Tenn.App. 642, 199 S.W.2d 928 (1946). As with most will problems, the testator's intent is thus the key.

■ Appellants Foster and Smith point out that Tennessee law indulges a presumption against any partial intestacy when a decedent dies testate, and especially so with regard to real estate. T.C.A. § 32–301; *Williamson v. Brownlow,* 219 Tenn. 464, 410 S.W.2d 878 (1967); *Ledbetter v. Ledbetter,* 188 Tenn. 44, 216 S.W.2d 718 (1949). The cases make clear that this presumption applies in absence of the appearance of a contrary intent and only when "the words used, by any fair interpretation, will embrace the property not otherwise devised." *McDonald v. Ledford,* 140 Tenn. 471, 205 S.W. 312, 313 (1918). In the instant case,

however, the devise of realty cannot be found to be embraced within the words of the will by fair interpretation, for testatrix specifically lined it out. This unequivocal act of cancellation of the realty clause necessarily is prima facie proof of a valid revocation by testatrix, which we do not think can be said to have been overcome by evidence of a contrary intent in the instant circumstances.

The evidence in this case, aside from the fact of cancellation itself, simply fails to show intent clearly and to rebut the strong inference of intent to revoke raised by the cancellation. Appellants argue that testatrix intended only to revoke the nomination of Fortner as executor. But the nature of the cancellation does not support this, for the entire clause naming Fortner executor and devising the realty is clearly lined out, with the most pronounced marks appearing over the words "Mr. & Mrs. W. B. Smith" near the end of it. Further, the word "void" appears not only over Fortner's name but also over the words "house & grounds" in the realty devise.

The other evidence is troubling in that it does not positively show why testatrix would wish to eliminate the realty devise as it was written in the 1972 will. But neither does it give any indication why she would line through that devise if not to revoke it. There is no evidence that the revocation was made conditional on a later devise of the realty being made by testatrix, so that the doctrine of dependent relative revocation would void the revocation. See *Briscoe v. Allison,* 200 Tenn. 115, 290 S.W.2d 864 (1956); *Stover v. Kendall,* 41 Tenn. 557 (1860). The 1974 will, made at or about the same time as the revocation, does not appear incomplete in any way. It is thorough in its treatment of personalty, and makes so complete a disposition of it as to supersede the 1972 will in this regard, as the trial court held. That a "codicil," consisting of only a few lines, was placed at the end of the 1974 will also suggests that testatrix considered that document complete. In addition, the 1967 will is evidence that a plan of not devising the realty was in testatrix's

mind at one time, for she there provides that the realty be sold but does not allocate the proceeds to anyone. There was testimony that testatrix was dissatisfied with wills she had written prior to 1974, and it is entirely possible that there were reasons not shown in this record, and perhaps known only to testatrix, which compelled her to eliminate the devise of realty intentionally. In any event, there is not nearly sufficient evidence of contrary intent to overcome the strong evidence of revocatory intent supplied by the act of lining out the devise. In such a case, we cannot find that the trial court erred in concluding that testatrix died intestate as to her realty.

 Appellee has argued that proper notice of the propoundment of the 1972 will was not given by its proponents to the next of kin and other interested persons, although all had notice of the propoundment of the 1974 will, which began this litigation. We first point out that, contrary to appellee's apparent position, a finding of such a defect in procedure by this Court would require a remand to the trial court for correction before any consideration of the merits could be undertaken here, rather than an affirmance on the ground that the 1972 will could not be held to bind those not in receipt of notice. This is obviously so because a fair and complete consideration of the merits in this case clearly requires that the 1972 will be fully taken into account, as has been done above. We have not addressed ourselves to the notice question, however, since it was clear to us that the 1972 will could not be held to bind anyone in any respect, and that the judgment below would have to be affirmed on the merits. The 1972 will was unfavorable to those alleged not to have proper notice of it. Since on the merits that will was of no effect and the result wholly in favor of those allegedly not notified, who could thus not possibly benefit from presenting further arguments in their favor, a remand to provide them further notice would be a futile waste of time for all concerned. If the alleged defect in notice exists, it is harmless. We have therefore avoided consideration of the notice question, and affirm the judgment below on the merits.

Affirmed.

SHRIVER, P. J., and TODD, J., concur.